

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS



PRICE DANIEL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:      Opinion No. O-3546
              Re: Intangible tax and gross
              receipts tax levied against
              motor bus companies and carriers.

In your letter of May 15, 1941, you request our
opinion in response to the following questions:

"Reference is made to Article XIII and
XIV of House Bill No. 8 of the Regular Session
of the Forty-seventh Legislature.

"Article XIII requires all motor-bus
companies defined in Chapter 270, Acts of
the Regular Session of the Fortieth Legislature,
etc., 'and each common carrier motor carrier
operating under certificates of convenience and
necessity issued by the Railroad Commission of
Texas. . . .' to pay an intangible tax.

"Article XIV requires each individual
partnership, company, etc., doing business
as a motor-bus company as defined in Chapter
270, Acts of the Regular Session of the
Fortieth Legislature, etc., or a motor carrier or
a contract carrier as defined in Chapter 247,
Acts of the Regular Session of the Forty-second
Legislature, over and by use of the public high-
ways of the state to pay a gross receipts tax
but provides that, 'carriers of persons or pro-
perty who are required to pay an intangible
assets tax under the laws of this State are here-
by exempted from the provisions of this Article.'

"The question has arisen in this department as to just what motor carriers are required to pay intangible taxes and those required to pay gross receipts taxes under these two Articles.

"(1) Would those vehicles operating under the certificate of convenience and necessity constitute the class that pays the intangible tax and those that operate under permits constitute the class that pays the gross receipts tax?

"(2) May the Intangible Tax Board levy the tax against motor-bus companies subject to the payment of intangible taxes for the year 1941? (3) If not, would such companies be required to pay a gross receipts tax for the year 1941?

"A cargo of wool is received at San Angelo, Texas, by a permit carrier under Article XIV of House Bill No. 8, Forty-seventh Legislature, for interstate shipment from San Angelo to Boston. The carrier received at San Angelo the entire cost of the freight to Boston. He hauls the cargo of wool to Houston by truck and delivers it to ship lines which carry the wool on to Boston and pays the ship line its portion of the freight. (4) Is such carrier required to pay gross receipts for hauling this cargo; (5) if so, on what portion of the freight bill?"

All motor bus companies licensed under Article 911a, Vernon's Annotated Civil Statutes, are declared to be common carriers by that statute. While the words "certificate" and "permit" are both found in the Act, we find they are used interchangeably in most instances. Actually the instruments issued by the Railroad Commission under the Motor Bus Act authorizing permanent operations are certificates of convenience and necessity. Under Section 5, the Commission is authorized under certain conditions to issue "temporary certificates or permits."

The word "temporary" is necessary in properly describing the instrument thus issued under Section 5.

Under the Motor Carrier Statute, Article 911b, Vernon's Annotated Civil Statutes, operating rights of a permanent nature are represented by three types of instruments, namely, certificates of convenience and necessity, contract carrier permits and special permits (generally called special commodity permits).

Answering your first question, it is our opinion that the intangible tax levied by Article 13 of House Bill 8, in so far as it affects motor bus companies and motor carriers applies only to those holding certificates of convenience and necessity authorizing permanent operations. This leaves the holders of temporary certificates, of contract carrier permits and special commodity permits subject to the tax levied by Article 14, of House Bill 8.

Your second question is answered in the affirmative. From the case of Cadena v. State, 185 S.W. 367, we quote:

"All property owned on the 1st day of January is subject to any tax authorized by law, whether such taxes have been authorized theretofore or may be authorized during tye year, and can be levied by the body given the power to levy at any time during the year. Laws naming the time for the levy of taxes are merely directory, and legal taxes can be levied whenever the necessity arises. Laws authorizing taxes are not retrospective so far as the year in which they are authorized is concerned."

See also, Masterson v. Hedley, 265 S.W. 406; 61 C.J. 564. Your third question need not be noticed further, as it was contingent upon a different answer to the second.

Article 14 requires the payment of a tax equal to 2.2 per cent of the gross receipts from "intrastate business done within this State." The business mentioned in your fourth question is clearly interstate. The Act makes no attempt to

levy the tax on receipts from interstate business even though done in this State. We answer your fourth question in the negative, making it unnecessary to notice the fifth question submitted by you.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By     Glenn R. Lewis
           Assistant

GRL:db:bt

APPROVED June 6, 1941

Grovers Sellers
First Assistant
Attorney General